EDWARD G. BASS, JR. and MARION L. BASS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bass v. Commissioner
Docket Nos. 1946-78, 8136-78.[1]
United States Tax Court
T.C. Memo 1981-146; 1981 Tax Ct. Memo LEXIS 591; 41 T.C.M. (CCH) 1176; T.C.M. (RIA) 81146; March 30, 1981. *591 Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tex Court Rules of Practice and Procedure. [2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax under section 6653(a): Addition to tax
Year
Deficiency
(Sec. 6653(a))
1973
$ 1,169.79
1974
4,220.38
1975
4,563.12
$ 228.16
1976
693.00
34.65
The issues for decision are (1) whether petitioners or a trust is taxable on compensation and interest income earned during each of the years involved which were assigned to a trust; (2) whether petitioners sustained a deductible loss from a trust during 1976; (3) whether petitioners are entitled to a deduction *592 for auto expenses incurred during 1976; and (4) whether any part of the underpayment of tax for 1975 and 1976 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners resided in Elkhorn, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 through 1976 with the Internal Revenue Service Center, Kansas City, Missouri. On August 31, 1973, petitioner Edward G. Bass, Jr. (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Pure Trust." The document was executed by petitioner for the purpose of creating a trust known as the Edward G. Bass, Jr. Family Estate A Trust (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR HEREOF AND GRANTOR HERETO. Included therein is the exclusive use of his lifetime services and ALL OF his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever *593 * * *." Petitioner's wife Marion L. Bass (hereinafter Marion) and a friend, Ena Lundgren (hereinafter Ena) were the initial trustees of the Trust. On August 31, 1973, petitioner and Marion were appointed lifetime trustees and on September 1, 1973, Ena resigned as a trustee.Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed documents on September 3, 1973, for the purpose of conveying his real and personal property, including certain savings accounts and insurance policies to the Trust. Also, on September 3, 1973, petitioner executed a document to convey the exclusive use of his lifetime services and all currently earned remuneration to the Trust. In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued 100 units of beneficial interest to petitioner on September 3, 1973. On this same date petitioner transferred 50 units to Marion. After additional transfers *594 by petitioner on December 31, 1973, the units of beneficial interest were held as follows: Units
Edward G. Bass, Jr.
10
Marion L. Bass
50
Catherine Ann Base
20
Ann Marie Bass
20
The rights of the owners of the beneficial interest as set forth in the certificate are that "Benefits hereby conveyed consist solely of the emoluments as distributed by the action of the trustees and nothing more." With respect to trustee powers, the Declaration of Trust provides "Trustees' may do anything any individual may legally do in any state or country, subject to the restrictions herein noted." The Trust document does not materially restrict the actions of the trustees, but the document does provide "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." On September 21, 1973, petitioner and Marion entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and Marion would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to *595 remuneration for their services and shall from time to time submit statements for their consultant Fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 through 1976, the Trust paid personal expenses of petitioner and Marion, including housing, transportation, health care, accounting, insurance and vacations. In addition the Trust paid petitioner and Marion consulting fees totaling $ 990, $ 4,040 and $ 4,200 for the years 1973, 1974, and 1975, respectively, which petitioners reported on their income tax returns. The consulting fee was based on the personal needs of petitioner and Marion and was not based on the services performed by petitioner or Marion. Since its creation, no additional personal or real property has been transferred to the Trust and no distributions have been made to beneficiaries other than petitioner and Marion. During the years involved herein, petitioner performed services as an employee operating heavy equipment for Magill & Welkos Construction Co. All wages petitioner received for such services after the Trust was formed were deposited in the Trust bank *596 account. At all times herein petitioner was under the direct supervision of his employer and had complete control of the wages earned. During 1973, 1974, and 1975, petitioner earned wages as an employee in the amounts of $ 4,349.17, $ 18,239.29 and $ 18,118.95, respectively, which he failed to report as income. Also, petitioners failed to report interest income earned as follows: Year
Interest Income
1973
$ 697.03
1974
$1,696.39
1975
2,039.33
1976
2,257.87
All of the above amounts were improperly reported by the Trust. During 1976, while employed with Magill & Welkos Construction Co. as a heavy equipment operator petitioner worked at various construction sites. Petitioner used his automobile to commute to his place of employment and between various job sites. Petitioner was required to move from one job site to another during the same day when he had completed his work assignment at a particular location. Petitioner maintained a diary to account for his travel between job sites. Petitioner traveled 2,374 miles between various job sites during the year. Respondent disallowed the deduction for travel between job sites primarily for lack of substantiation. *597 For the years 1975 and 1976, respondent asserred the addition to petitioners' tax for negligence. Petitioners presented no evidence with regard to this issue and did not address the issue on brief. Respondent also disallowed a loss from the Trust in the amount of $ 175.54 for the year 1976. The parties agree that the loss is not deductible if the Trust is disregarded for income tax purposes. OPINION The first issue to consider is whether petitioners or the Trust is taxable on the compensation and interest income earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's primary position, our opinion will be limited to this extent. Petitioner argues that he had a constitutional right to enter into a contract with the Trust for his services and to convey his property to the Trust. Further, he argues that since *598 a valid trust was created the income earned from his services and property is properly taxable to the Trust. Petitioner recognizes he performed his services in the same manner both before and after formation of the Trust, but maintains that the Trust had the right to engage petitioner as an independent contractor and to vend his services to third parties. Petitioner also points out that since savings accounts were transferred to the Trust at least the interest income should be recognized as the Trust's income. Although it is clear that the income earned by petitioner for his services as a heavy equipment operator is taxable to him since he earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in , the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. . Based on the various documents executed by petitioner, the appearance of a trust was established. *599 However, upon an examination of the Trust document and the actual operation of the Trust, there is no question that the Trust rests on a foundation of meaningless pieces of paper. As we said in , "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. , affd. per curiam ." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than from the wages and the interest income which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the Trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have *600 done shall be evidence that such act is within their power." Such unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioner's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance of complete control of the future income to be earned by petitioner. In fact, there was no understanding concerning the payment of consulting fees to either Marion or petitioner for their services. Instead payments were made from the Trust to satisfy the personal needs of petitioner and Marion. Under the circumstances, such as we have here, we cannot find that petitioner's assignment of his services and income was either meaningful or enforceable and we can only conclude that there was no change in the economic benefit of petitioner's wages by reason of the assignment of his services to the Trust. Based on the facts herein, it is clear that the Trust had no independent *601 economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that a trust arrangement similar to the one in the instant case was not effective to shift the incidence of taxation from the taxpayer to a trust, see ; ; ; , affg. ; , affd. by unpublished order (7th Cir. June 7, 1978), cert denied ; ; and . The next issue is whether petitioners are entitled to a deduction for automobile expenses incurred in 1976 for local travel when petitioner was employed at two or more job sites on the same day. Respondent claims petitioners have failed to substantiate the miles traveled. Apparently, respondent agrees that the travel *602 expense between two job sites on the same day is a proper deduction under the Code. At trial petitioner produced a contemporaneous diary maintained for his travel between job sites. Based on this record we are convinced that the mileage claimed by petitioner was actually incurred. Since the cost of traveling between two or more places of employment on the same day is deductible, , petitioners are entitled to the deduction as claimed on their income tax return. The final issue concerns the imposition of the addition to tax for the years 1975 and 1976 for negligence or intentional disregard of rules and regulations under section 6653(a). Petitioners failed to introduce any evidence to explain their failure to report substantial amounts of income. Also, there is no evidence to show that they had good reason to believe that the Trust arrangement was something other than a flagrant tax avoidance scheme. Rather, we do find that both petitioners were intelligent and realized that substantial amounts of income taxes could not be avoided simply by assigning income to a trust and still continue to personally enjoy this same *603 income; or, if they were not aware of this fact, they would have consulted a person knowledgeable in tax law before entering into such a complex arrangement. On this basis we sustain respondent's determination that part of petitioners' underpayment of tax for 1975 and 1976, was due to negligence. To reflect the conclusions reached herein, Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for the purpose of trial, briefing and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩